In the Supreme Court of Georgia

Decided:   February 22, 2016

S15A1617.  GOMILLION v. THE STATE.

THOMPSON, Chief Justice.

This is the second appearance of this case in this Court.  In Gomillion v.
State, 296 Ga. 678 (769 SE2d 914) (2015), we held that the evidence was legally
sufficient to support appellant Michael Gomillion's convictions relating to the
shooting death of Clyde Chaney.  Id. at 678-680.  However, we also held that,
in denying appellant's motion for new trial, the trial court failed, in response to
appellant's request, to exercise its discretion to review the evidence as a
thirteenth juror.  Id. at 680-681.  Without addressing appellant's remaining
enumerations of error, we therefore vacated the order denying the motion for
new trial and remanded the case for the trial court to apply the proper standard
to the general grounds.  Id. at 681.  On remand, the trial court exercised its
discretion as a thirteenth juror and denied the motion for new trial.  Appellant
then filed this appeal.  For the reasons that follow, we affirm.

1.  When Chaney was shot, he "was at a drug or 'trap' house run by LaQuincy Bryant and Benny Clay.  Early on in the day, appellant came by looking for Bryant, but Bryant was not at the house."  Id. at 678.  Before the shooting, Clay told Bryant that appellant had come by the house looking for him.  At trial, over appellant's hearsay objection, Bryant testified that, after the shooting, a neighbor told him that she had seen appellant running from the crime scene.  Appellant contends that Bryant's testimony regarding the neighbor's statement was inadmissible hearsay and that the trial court erred by allowing it. We find no error.

Bryant was a key witness for the State, and Clay's statement to Bryant that Gomillion had been looking for him on the night of the shooting, coupled with the neighbor's statement that she had seen Gomillion running away after the shooting, led Bryant to decide that he should leave immediately because he was likely Gomillion's target, not Chaney.[1]  For this reason, and because the trial court instructed the jury that the statement "is being allowed in not because of the fact it may be true, . . . it's being admitted to explain [Bryant's] conduct,

_____

[1] We note that the defense attacked Bryant's credibility on cross-examination by questioning why he left the crime scene without talking to the police and without seeking assistance for Chaney, his friend.

2

why he left the scene," the trial court did not abuse its discretion in admitting the neighbor's statement to explain Bryant's reason for leaving. See former OCGA § 24-3-2[2] (providing that, "[w]hen, in a legal investigation, information, conversations, letters and replies, and similar evidence are facts to explain conduct and ascertain motives, they shall be admitted in evidence not as hearsay but as original evidence"); McCoy v. State, 273 Ga. 568, 572 (544 SE2d 709) (2001) (holding that out-of-court statements were admissible to explain a witness's delay in going to the police); Collins v. State, 273 Ga. 93, 96 (538 SE2d 47) (2000) (same); Moore v. State, 295 Ga. 709, 712 (763 SE2d 670) (2014) (explaining that we review a trial court's "admission of evidence for an abuse of discretion").

2. Appellant contends that the trial court erred in allowing Tamir Harris to testify about a previous shooting as a similar transaction because the State failed to show that appellant was the shooter. See Gomillion, 296 Ga. at 679 (describing Harris's testimony about this shooting). We conclude, however, that even if the trial court erred in admitting the evidence, the error was harmless.

---

[2]Appellant was tried before the effective date of our new Evidence Code.

First, appellant does not challenge the admission of evidence of a second similar transaction that occurred in 2001, about four years before the present crimes. Evidence of that crime, to which appellant pled guilty, showed that appellant shot Richard Crowley five times after a dispute over money at a drug house and that, when he did so, he was wearing dark clothing and a mask. See id. Thus, even if the jury should not have heard the evidence of the crime described by Harris, the jury nevertheless heard the probative similar transaction evidence of the 2001 shooting.

Moreover, the evidence – other than Harris's similar transaction testimony – that appellant shot Chaney is overwhelming. This evidence consisted of the 2001 similar transaction; forensic evidence that the bullet recovered from the victim could have been fired from appellant's .357 Magnum; and that on the day of the crime, appellant cleaned and loaded the gun at a friend's house, told someone on the telephone that "This is what I do to someone who takes from me. Murder, b***h," and went by the drug house at which the shooting occurred looking for Bryant. There was also evidence that, after the shooting, several people saw the shooter, who was wearing dark clothing and a ski mask, run from the scene; that one of the people at the drug house recognized appellant

4

as the shooter when the shooter stopped under a street light and pulled off the ski mask; and that, after appellant was arrested, dark clothing and a blue ski mask were found in the car he was driving.

Considering the proper admission of the 2001 crime and the strength of the evidence against appellant, we conclude that it is highly probable that any error by the trial court in admitting evidence of the similar transaction involving Harris did not affect the jury's verdict. See Peoples v. State, 295 Ga. 44, 55-58 (757 SE2d 646) (2014) (explaining that "'[t]he test for determining nonconstitutional harmless error is whether it is highly probable that the error did not contribute to the verdict'" and holding that the trial court's error in admitting evidence of a similar transaction was harmless, in part, because of the overwhelming evidence of guilt (citation omitted)); McCain v. State, 292 Ga. App. 886, 887 (665 SE2d 912) (2008) (holding that any error in admitting evidence of an independent crime by the defendant was harmless, in part, because the jury heard evidence of another properly admitted similar transaction); Bradford v. State, 261 Ga. App. 621, 622 (583 SE2d 484) (2003) (same).

3. Appellant contends that the trial court erred in denying his motion to

suppress the evidence seized from the car he was driving. See Gomillion, 296 Ga. at 679-680 (describing the evidence found in the car appellant was driving). We disagree.

Appellant was not the owner of the car he was driving. The day appellant was arrested, the police contacted the owner of the car and obtained her consent to search it. Among other reasons, the trial court denied the motion to suppress on the ground that the owner's consent properly authorized the police to search the vehicle. Appellant asserts, however, that the owner of the car had effectively given the car to him, giving him an expectation of privacy in the car and requiring that the police obtain his consent before searching it. Even assuming that appellant had a legitimate expectation of privacy in the vehicle, see 6 W. LaFave, Search and Seizure § 11.3 (e) (5th ed.) (explaining that "it has been held that . . . a person driving the car with the owner's consent or bailee's consent . . . ha[s] standing to object to a search of that vehicle"), we conclude that the search was proper.

Here, when a police officer contacted Averi Lamb after the car had been impounded, she confirmed that she was the owner of the car and said that she had permitted appellant to use the car. The officer asked for and obtained

6

Lamb's consent to search the car. Because Lamb was the car's owner and said only that she had given permissive use of the vehicle to another, the police officer could have reasonably believed that she had not relinquished any of her right to use and control possession of the car and therefore had the right to consent to a search of it. See United States v. Guzman, 507 F3d 681, 687 (8th Cir. 2007) (explaining, that, generally, "[a]n owner of a vehicle may consent to its search even if another person is driving the vehicle" and has an expectation of privacy in it). Accord United States v. Jensen, 169 F3d 1044, 1049-1050 (7th Cir. 1999); Hardy v. Commonwealth, 440 SE2d 434, 437 (Va. Ct. App. 1994). See also Illinois v. Rodriguez, 497 U.S. 177, 188-189 (110 SCt 2793, 111 LE2d 148) (1990) (if a police officer could have reasonably believed that a third party had authority to consent to a search, the search is lawful).[3]

Appellant, however, contends that, despite the owner's consent, his expectation of privacy in the car required that the police obtain his consent to justify the warrantless search. Even if we assume that the owner's interest was not superior to appellant's and that if appellant had been present and objected

_____

[3] We note that there is no evidence that Lamb had "lost sufficient control [of the vehicle] as to lack authority to consent to a search." 4 W. LaFave, Search and Seizure § 8.6 (b) (5th ed.)

to the search, the police would have had to honor his objection, but see Hardy, 440 SE2d at 437 (holding that, when the owner of a car loaned his car to the defendant for an indefinite time, the owner's interest in the car was superior to the defendant's privacy interest and that the owner's consent to search overrode the defendant's objection to the search), this argument is without merit.

To begin, appellant cites to no case that requires the police to obtain the consent of all persons with common authority over a premises or vehicle to make a warrantless search lawful. On the contrary, cases of the United States Supreme Court "firmly establish that police officers may search jointly occupied premises if one of the occupants consents." Fernandez v. California, __ U.S. __ (134 SCt 1126, 1129, 188 LE2d 25) (2014). Although "[i]n Georgia v. Randolph, 547 U.S. 103 (126 SCt 1515, 164 LE2d 208 (2006), [the Court] recognized a narrow exception to this rule, holding that the consent of one occupant is insufficient when another occupant is present and objects to the search," Fernandez, 134 SCt at 1129,[4] the Fernandez Court declined to extend

---

[4]For purposes of this case, we will assume that cases involving premises like Fernandez and Randolph are applicable in the context of vehicle searches. But see Randolph, 547 U.S. at 115 (saying that "we hold to the centuries-old principle of respect for the privacy of the home" and that "it is beyond dispute that the home is entitled to special protection as the center of the private lives of our people" (citations and quotation marks omitted)); Rakas v. Illinois, 439 U.S. 128, 148 (99 SCt

the rule of Randolph, holding that it is limited to situations when an objecting resident is physically present. There, Fernandez was arrested and taken from an apartment he shared with another person, but not before he objected to the police searching the apartment. About an hour later, a police officer returned to the apartment and obtained the consent of the remaining resident to search the premises in Fernandez's absence. Id. at 1030. Fernandez contended that his absence "should not matter because he was absent only because the police had taken him away." Fernandez, 134 SCt at 1134. The Court rejected this contention, holding that Fernandez was lawfully arrested, see id.; that "an occupant who is absent due to a lawful detention or arrest stands in the same shoes as an occupant who is absent for any other reason," id.; and that Randolph "unequivocally requires the presence of the objecting occupant in every situation other than the one mentioned in the dictum" in Randolph, id. at 1134-1135. That dictum was "that consent by one occupant might not be sufficient if 'there is evidence that the police have removed the potentially objecting tenant from the entrance for the sake of avoiding a possible objection.'" Id. at 1134

---

421, 58 LE 2d 387) (1978) ("We have on numerous occasions pointed out that cars are not to be treated identically with houses or apartments for Fourth Amendment purposes.").

(quoting Randolph, 547 U.S. at 121). The Fernandez Court also rejected Fernandez's argument that the objection that he made at the premises before he was arrested "remained effective until he changed his mind and withdrew his objection." Id. at 1035. Here, appellant never lodged an objection to the search of the car and does not contest the lawfulness of his arrest. Under the principles of Fernandez and Randolph, because appellant was not present and objecting at the time of the search of the vehicle he was driving, the owner's consent was all that was required for the search to be lawful.

Judgment affirmed. All the Justices concur.