In the Supreme Court of Georgia

Decided: April 4, 2016

S16A0059. ANTHONY v. THE STATE.

BLACKWELL, Justice.

Appellant Danny Lorenzo Anthony was tried by a Taylor County jury and convicted of murder. He appeals, contending that the evidence is legally insufficient to sustain his convictions and that the trial court erred when it denied his motion for pretrial immunity, when it failed to excuse a prospective juror for cause, when it admitted evidence of other acts of the appellant, and when it charged the jury. Upon our review of the record and briefs, we see no error, and we affirm.[1]

---

[1] The victim was killed on October 20, 2011. The appellant was indicted on June 11, 2012 and charged with malice murder, felony murder, and aggravated assault. His trial commenced on March 11, 2013, and the jury returned its verdict four days later, finding him not guilty of malice murder and guilty on both of the other counts. The appellant was sentenced to imprisonment for life for the felony murder, and the aggravated assault merged with the felony murder. The appellant timely filed a motion for new trial on April 8, 2013, and he amended it on January 6, 2014. The trial court denied his motion on November 12, 2014, and the appellant timely filed a notice of appeal on November 17, 2014. The case was docketed in this Court for the January 2016 term and was submitted for decision on the briefs.

1. Viewed in the light most favorable to the verdict, the evidence shows that the appellant and his wife, Pam Anthony, raised horses. The Anthonys were longtime friends of Harry and Linda Nipper, and Harry cared for the Anthonys' horses as a farrier. In October 2010, Linda discovered — and told the appellant — that Harry and Pam were having an affair. Although Harry and Pam denied the affair, the appellant sent Harry a letter terminating his farrier services and, after a failed reconciliation attempt, made Pam leave their home in January 2011. Pam moved into a nearby trailer, filed for divorce several months later, and continued her affair with Harry. Twice thereafter, she reported to the Sheriff's Department that her car had a flat tire caused by a large cut, and the appellant later admitted that he slit her tire once when she had parked her car at a courthouse where she was to meet Harry. About two weeks before the shooting, the appellant told Linda that he planned to use legal means to take photos of Harry and Pam together, which he intended to use as evidence in his divorce case. When Linda expressed concern about the plan, the appellant said that he had something that would "handle" Harry, and the appellant showed Linda a gun that he was carrying.

On October 20, 2011, Harry told Pam that he would pick her up at the end of her driveway. The appellant drove by and stopped his truck just as Harry was arriving. Harry exited his truck, approached the appellant's truck, and told the appellant that, if he had something to say, he should come and say it. Pam heard two shots and ran to the front of her residence, where she found Harry leaning against a tree. Harry said, "I hit him, Pam; he shot me, he shot me, Pam." The appellant then drove his truck through the front yard as Harry ran away. Harry fell to the ground, and the appellant exited his truck, stood over Harry with a gun, and cursed him. The appellant said that he wanted to see Harry "f**k her now" and that the appellant was "going to watch [Harry] die." The appellant also told Pam to "[s]ee what [Harry] could do for you now, see if you can f**k him now. . . . [Y]ou're going to watch him die." After walking away and calling 911, the appellant called Linda, calmly telling her that he "just shot Harry. . . . [H]e slapped me upside the head, so I shot him." And when law enforcement officers arrived, the appellant told them about the affair and said that Harry "hit him upside the head and [the appellant] shot him."

Responding officers discovered no bruising, bleeding, or other injury on the appellant's face or body. According to the medical examiner, Harry died

3

from a single gunshot wound that perforated his heart, and the shot was fired from an indeterminate range at least two to three feet away. The firearms examiner testified that the shot was fired from a distance of 24 to 30 inches away. Although Harry was a much larger man than the appellant, and although the appellant presented several witnesses in support of his theory of self-defense, he admitted during his own testimony that he told his daughter that he "screwed up," that Harry "hit me first but I let my temper go away, I guess," that "I lost control of my actions," and that he could have driven away from the confrontation.

About the sufficiency of the evidence, the appellant argues that the State failed to prove beyond a reasonable doubt that he was not justified in shooting Harry. The appellant relies on his own testimony, as corroborated by Pam, that he carried a gun to protect himself from Harry, who had a reputation for violence and had threatened the appellant, that the appellant never intended a confrontation with Harry, and that Harry hit the appellant, knocking his glasses off, and was trying to pull him out of his truck window when the appellant fired his gun. But other evidence, including other testimony from the appellant himself, refuted the evidence of Harry's violent reputation and was not

4

consistent with self-defense. The testimony that Harry was shot from at least 24 to 30 inches away indicates that he was not locked in combat with the appellant, there is no evidence that Harry was armed, his striking of the appellant did not cause any visible injury, and the appellant admitted that he could have driven away. See Payne v. State, 289 Ga. 691, 692 (1) (b) (715 SE2d 104) (2011). Moreover, the appellant's subsequent actions and words arguably did not comport with self-defense. "As we have explained many times before, conflicts in the evidence, questions about the credibility of witnesses, and questions about the existence of justification are for the jury to resolve." Grimes v. State, 293 Ga. 559, 560 (1) (748 SE2d 441) (2013). The jury is free to reject any evidence in support of a justification defense and to accept the evidence that the shooting was not done in self-defense. See Cotton v. State, 297 Ga. 257, 258 (1) (773 SE2d 242) (2015). Viewing the evidence in the light most favorable to the verdict, as we must, we conclude that the evidence was sufficient to authorize a rational trier of fact to find beyond a reasonable doubt that the appellant was guilty of murder. See Jackson v. Virginia, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979).

2. Before trial, the appellant filed a motion under OCGA § 16-3-24.2 for immunity from prosecution. Following a hearing, the trial court denied the motion, and the appellant now claims that the trial court erred when it determined that his justification defense was not strong enough to afford him immunity from prosecution. "In reviewing the denial of [a] motion for pretrial immunity, we must view the evidence in the light most favorable to the trial court's ruling and accept the trial court's findings of fact and credibility determinations if there is any evidence to support them." Sifuentes v. State, 293 Ga. 441, 444 (2) (746 SE2d 127) (2013). To avoid trial based on a justification defense presented at an immunity hearing, "a defendant bears the burden of showing that he is entitled to immunity under OCGA § 16-3-24.2 by a preponderance of the evidence." Bunn v. State, 284 Ga. 410, 413 (3) (667 SE2d 605) (2008). See also Cotton, 297 Ga. at 258 (2).

At the hearing on the appellant's motion, his lawyer presented the testimony of several witnesses regarding Harry's reputation for violence and a prior threat against the appellant, and those witnesses were cross-examined. The lawyer then stated in his place what he expected that the testimony of the appellant and Pam would show about the confrontation between Harry and the

6

appellant. The prosecuting attorney explained what she anticipated would be shown by the State's evidence, but she did not call any witnesses, and she objected that it would be inappropriate for the trial court to rule that the appellant has immunity from prosecution based on the statement of his lawyer without any evidence about the confrontation.

"Attorneys are officers of the court and a statement to the court in their place is prima facie true and needs no further verification *unless the same is required by the court or the opposite party*." Sherman v. City of Atlanta, 293 Ga. 169, 173-174 (4) (744 SE2d 689) (2013) (citations and punctuation omitted; emphasis in original). The statements-in-place by the appellant's lawyer were not a proper substitute for evidence at the hearing on the motion for immunity because the State did not accept those proffers but rather insisted that the appellant prove his immunity with traditional evidence. Id. at 173 (4). Cf. State v. Cooper, 324 Ga. App. 32 (749 SE2d 35) (2013) (affirming the grant of a motion for immunity from prosecution and denying the State's motion to reopen the evidence, where the State never presented any evidence, made any proffer as to the omitted evidence, or cross-examined any of the defendant's witnesses at the hearing). Assuming that the statements-in-place of the appellant's lawyer

7

nevertheless could be considered, there would be no reason why the trial court could not also consider the prosecuting attorney's statements about the confrontation between Harry and the appellant. And because the statements of the appellant's lawyer and the prosecuting attorney were consistent with the evidence subsequently presented at trial — which, as discussed in Division 1, supra, was sufficient for the jury to find beyond a reasonable doubt that the appellant did not act in self-defense — the trial court certainly was authorized to find that the appellant failed to show self-defense by a preponderance of the evidence. For the same reason, we reject the appellant's further argument that, under Hipp v. State, 293 Ga. 415 (746 SE2d 95) (2013), the trial court should have exercised its inherent authority to grant his renewed motion to dismiss at trial and on motion for new trial after the trial court had the benefit of hearing the appellant's own testimony. In short, the trial court was authorized to find that the appellant failed — before, during, and after trial — to meet his burden of showing that he was entitled to immunity under OCGA § 16-3-24.2.

3. The appellant contends that the trial court erred when it failed to excuse a certain prospective juror for cause because of his law enforcement background, his friendship with two potential witnesses for the State, his

acknowledged bias in favor of the prosecution, and his admission that, for him, the appellant would have the burden of proving self-defense. At trial, however, the appellant's lawyer asked the trial court to remove this prospective juror only because of his law enforcement background and his view of the burden of proving self-defense. So the issues of the prospective juror's friendship with potential witnesses and his general bias in favor of the prosecution are waived because the appellant's motion to excuse made no mention of those issues.[2] See Rice v. State, 292 Ga. 191, 197 (3) (f) (733 SE2d 755) (2012). See also Turner v. State, 293 Ga. App. 869, 870-871 (2) (668 SE2d 268) (2008) (because the objection raised in a motion to strike a juror for cause was different from the argument on appeal, there was nothing to review).

The objections to this prospective juror that were preserved for review did not require that he be excused for cause. Although he had served as a conservation ranger with the Georgia Department of Natural Resources, he had

---

[2] As to the merits of these waived issues, however, we note that the prospective juror said that his friendship with the sheriff and a deputy who were potential witnesses would make the job of the appellant's lawyer "a little bit harder" and that the juror would lean to the law enforcement side although he had no great prejudice and thought defense lawyers do a great job. Such beliefs do not necessarily require that a prospective juror be excused for cause. See Ellis v. State, 292 Ga. 276, 286 (4) (d) (736 SE2d 412) (2013); Roberts v. State, 276 Ga. 258, 259 (2) (577 SE2d 580) (2003).

been retired for 25 years at the time of trial. See Ellis v. State, 292 Ga. 276, 284-285 (4) (c) (736 SE2d 412) (2013); Chavarria v. State, 248 Ga. App. 398, 398-399 (1) (a) (546 SE2d 811) (2001). And while one of his responses during voir dire showed a misunderstanding of the law when he indicated that the defendant would bear the burden of proving self-defense, the prospective juror later testified unequivocally that he could follow the court's instructions on the law "as it relates to the burden of proof, who has the burden of proving what." See Nelson v. State, 247 Ga. 172, 176 (8) (274 SE2d 317) (1981). See also Roberts v. State, 276 Ga. 258, 259-260 (2) (577 SE2d 580) (2003); Chambers v. State, 252 Ga. App. 190, 191-192 (2) (556 SE2d 444) (2001). Cf. Carter v. State, 326 Ga. App. 144, 151 (4) (a) (756 SE2d 232) (2014) (where the juror never gave an affirmative response that he would be able to follow the court's instructions that the defendant had no burden to put forth proof of his innocence); McGuire v. State, 287 Ga. App. 764, 765 (1) (653 SE2d 101) (2007) (same). We conclude, therefore, that the trial court did not abuse its discretion when it declined to excuse this prospective juror for cause.

4. The appellant claims that the trial court erred when it admitted evidence pursuant to OCGA § 24-4-404 (b) relating to four "other acts" allegedly

10

committed by the appellant. Although the State argues that the appellant did not object to the testimony about those acts, the trial court ruled definitively at a pretrial hearing that evidence of the four acts would be admissible. "Once the court makes a definitive ruling on the record admitting or excluding any evidence, either at or before trial, a party need not renew an objection or offer of proof to preserve such claim of error for appeal." OCGA § 24-1-103 (a). See also United States v. Isley, 369 Fed. Appx. 80, 92 (II) (C) (2) (11th Cir. 2010); Paul S. Milich, Ga. Rules of Evidence § 3:6 (database updated October 2015). Cf. Whitehead v. State, 287 Ga. 242 (695 SE2d 255) (2010) (decided prior to the effective date of the new Evidence Code, which includes OCGA § 24-1-103 (a)). Consequently, we now turn to the merits of this claim.

The four "other acts" at issue are an alleged cutting of Pam's car tire by the appellant at her residence, his display of a gun and threat to use it on Harry, his following Pam to the courthouse and surveilling her car overnight while she was with Harry, and his cutting her tire when her car was parked at the courthouse. The trial court admitted evidence of these acts as relevant to motive, preparation, and plan, finding that their probative value was not substantially outweighed by their potential for undue prejudice. In order to admit "other acts"

11

evidence for such purposes, a trial court must find that "(1) the evidence is relevant to an issue in the case other than the defendant's character, (2) the probative value is not substantially outweighed by undue prejudice, and (3) there is sufficient proof for a jury to find by a preponderance of the evidence that the defendant committed the prior act." Brannon v. State, ___ Ga. ___, ___ (4) (Case Number S15A1724, decided March 7, 2016) (citation omitted).

The trial court here was authorized to find that the other acts were relevant to motive,[3] which is "the reason that nudges the will and prods the mind to indulge the criminal intent." Brooks v. State, ___ Ga. ___, ___ (2) (Case Number S15A1480, decided March 7, 2016). The appellant argues that the tire cutting and surveillance incidents show only that he was hurt by Pam's decision to divorce him and that he was gathering evidence for the pending divorce action. That certainly is one way in which the jury might have seen this evidence. But the evidence also could readily be understood as demonstrating the appellant's desire to take revenge and to provoke confrontation in response to his wife's affair with the victim. See Bradshaw v. State, 296 Ga. 650, 657 (3)

---

[3] Because the evidence was admissible as to motive, we need not determine whether it was also admissible to show preparation and plan. See Brannon, ___ Ga. at ___, n. 3 (4); Bradshaw, 296 Ga. 650, 657, n. 5 (3) (769 SE2d 892) (2015).

(769 SE2d 892) (2015) ("other acts" evidence showed the defendant's desire to use violence in response to cheating in a drug deal). Which is the better view of the evidence was for the jury to decide.

As this evidence of the four other acts was needed to counter the appellant's testimony at trial and the theory of self-defense on which he relied, the trial court did not err when it found that the probative value of the evidence was not substantially outweighed by the danger of unfair prejudice to the appellant. See Brannon, supra at ___ (4). The appellant asserts that the State was using the evidence for improper character purposes by trying to imply that he was disturbed enough to commit murder. But the other acts at issue here are probative precisely because they tend to show just how disturbed the appellant was as a result of the affair, which establishes his motive to kill Harry.

Finally, the record contains sufficient proof that the appellant committed three of the four prior acts at issue, as he admitted as much to others and later admitted the three acts during his testimony at trial. The other prior act was the tire cutting incident at Pam's residence. Assuming that the trial court improperly admitted evidence of that act due to a failure to prove the appellant's involvement, the error was harmless because the jury properly heard evidence

of the other tire cutting incident, which was highly probative, having been confirmed by the appellant and having occurred during the surveillance incident, closer in time to the homicide. See Gomillion v. State, ___ Ga. ___, ___ (2) (Case Number S15A1617, decided February 22, 2016).

5. The appellant further contends that two of the trial court's charges to the jury were improper. First, there is not even slight evidence, the appellant claims, to support the charge that "[a] person is not justified in using force if that person initially provokes the use of force against himself with the intent to use such force as an excuse to inflict bodily harm upon the assailant." See OCGA § 16-3-21 (b) (3). The evidence, however, showed that the appellant, possessing a firearm and believing that Harry did not want to speak with him, stopped his truck at Pam's residence, and a reasonable jury could infer that he did so to provoke a confrontation with Harry about the affair. The jury reasonably could have viewed the appellant's actions as being intended to provoke the use of force. See Johnson v. State, 229 Ga. App. 586, 588 (5) (494 SE2d 382) (1997). See also Williams v. State, 249 Ga. 822, 824-825 (2) (295 SE2d 293) (1982); Jackson v. State, 239 Ga. 40, 41 (3) (235 SE2d 477) (1977). Moreover, even if there were no evidence or contention that the appellant initially provoked

14

Harry's use of force with the intent to use that force as an excuse to shoot him, "inclusion of the instruction on that principle in the context of the entirety of the charge on justification did not mislead the jury or violate [the appellant's] due process rights." Lowe v. State, 267 Ga. 410, 413 (4) (478 SE2d 762) (1996) (citation and punctuation omitted) (the charge did not authorize the jury to convict the defendant of the commission of a crime in a manner not charged in the indictment, but rather addressed the inapplicability of justification as a defense to the crimes charged).

The second jury charge about which the appellant complains reads as follows: "However, the State is not required to prove the guilt of the accused beyond all doubt or to a mathematical certainty." This instruction is part of the pattern charge on reasonable doubt. Suggested Pattern Jury Instructions, Vol. II: Criminal Cases, § 1.20.10 (4th ed. 2007, updated through January 2016). It specifically has been approved by our Court of Appeals. See Boyd v. State, 230 Ga. App. 314, 315-316 (3) (497 SE2d 3) (1998); Pilcher v. State, 214 Ga. App. 395, 396-397 (1) (448 SE2d 61) (1994) (reviewing relevant United States Supreme Court precedent); Weldon v. State, 202 Ga. App. 51, 52 (3) (413 SE2d 229) (1991); Sell v. State, 156 Ga. App. 333, 335 (3) (274 SE2d 723) (1980).

Cf. Coleman v. State, 271 Ga. 800, 805 (8) (523 SE2d 852) (1999) (disapproving a different instruction on the definition of reasonable doubt, saying that "there are few, if any, circumstances which would justify a trial court's failure to use the suggested pattern criminal charges" on that topic). And the appellant has failed to cite any applicable authority in support of this claim. See Boyd, 230 Ga. App. at 315 (3). The fact that the sentence of which the appellant complains was introduced by the word "however" does not change the meaning of "all doubt" or "mathematical certainty." See McTyier v. State, 91 Ga. 254, 255 (10) (18 SE 140) (1892). Even assuming that the use of those terms amounted to error, we will not reverse the judgment on that basis because the charge as a whole properly informed the jury of the State's burden of proof and the meaning of reasonable doubt. See Whitt v. State, 257 Ga. 8, 9 (3) (354 SE2d 116) (1987); Jackson v. State, 214 Ga. App. 683, 683-684 (1) (448 SE2d 763) (1994).

Judgment affirmed. All the Justices concur.