**FOURTH DIVISION**
**DILLARD, P. J.,**
**RICKMAN and PIPKIN, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**August 14, 2023**

# In the Court of Appeals of Georgia

A23A1137. HOBBS v. THE STATE

PIPKIN, Judge.

Following a jury trial, Kevin Hobbs was convicted of voluntary manslaughter and possession of a firearm during the commission of a crime. Hobbs appeals the trial court's denial of his motion for new trial, arguing that the evidence was insufficient to support his convictions pursuant to *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979), and that the State committed prosecutorial misconduct during closing argument. For the reasons discussed below, we affirm.

1. Viewed in the light most favorable to the verdict, see id., the evidence presented at trial showed as follows. In April 2019, Danny Hicks was engaged to Andrea Manire. Hicks walked with the assistance of a cane due to pre-existing back issues, but he was able to help with some electrical work at the house of Manire's

mother; Hicks kept a utility trailer on the property where he stored his tools. Meanwhile, Hobbs was camped out in the wooded area behind the house because he was having an affair with Shannon Woodham, a woman who lived in a residence nearby.

On the afternoon of April 24, 2019, Woodham and Hobbs were hanging out in the woods "looking through a trailer of stuff." Woodham testified that Hobbs had taken items from the trailer on the property and hid them under her porch. She also testified that she saw Hobbs in possession of a firearm on the day of the shooting and that he carried the same firearm on a daily basis.

That evening, Hicks arrived at his trailer to find that it had been broken into and that his tools had been taken. Hicks left the property, picked up Manire, and the two returned to the house so that Manire could call the police. Upon their arrival, Manire and Hicks saw the light from a flashlight in the wooded area behind the house. They exited their vehicle and eventually headed toward the wood line where they "crouched down real low." All the while the person with the flashlight, later identified as Hobbs, moved closer to them and, at one point said, "it's all clear." Manire and Hicks discussed standing up and yelling out "if you give us our stuff back, we won't call the police," but as soon as they stood up, Hicks "took off" after

2

Hobbs, after which Manire heard a gunshot. Manire quickly called the police, and, while she was on the phone, she saw Hobbs stand up. She heard him say "I give up," and she saw him shoot Hicks; Hobbs then turned and walked away. Hicks died at the scene.

The medical examiner determined that Hicks had suffered two contact gunshot wounds, one to the upper right chest that severed a large vein, and one to his right thigh that severed the femoral artery. Hicks also suffered numerous blunt force injuries all over his body, and one of his teeth had been knocked out. The medical examiner testified that the blunt force injuries were consistent with the victim being hit with something rectangular in shape. The medical examiner opined that Hicks died as a result of massive blood loss from the two gunshot wounds.

During their investigation, the police learned that Woodham "was contacting people, saying that she knew [Hobbs] was involved" in the shooting. Officers eventually located numerous items that had been stolen from Hicks' trailer at Woodham's home. Woodham also provided a text message to investigators wherein Hobbs had sent her a picture of a gun he was "trying to get rid of." Hobbs was located four days later at the residence of Russell Morgan. Upon Hobbs' arrest, officers

noticed that a chunk of his right ear had been bitten off and that he had other minor scratches to his arms and legs consistent with being scraped by vines or thorns.

Hobbs contends that the evidence presented at trial was insufficient to support his convictions because the State failed to prove that he did not act in self-defense. We disagree. As this Court recently explained:

> Circumstances which are sufficient to show voluntary manslaughter, as opposed to justifiable homicide, include a situation in which sudden passion, or fear, is aroused in the actor, without malice aforethought, and the actor willfully kills his attacker, when it was not necessary for him to do so in order to protect himself. Conduct cannot be justified as self-defense if the amount of force used by the person to defend himself or herself is excessive. Whether or not the evidence shows that a person had a reasonable belief that it was necessary to use deadly force to prevent death or great bodily injury to himself is a question for the jury. And the determination of a witness's credibility, including the defendant's testimony, is within the exclusive province of the jury.

(Citation and punctuation omitted.) *Jennings v. State*, 363 Ga. App. 170, 173-174 (1) (869 SE2d 93) (2022). See also OCGA § 16-5-2 (a) (defining voluntary manslaughter). While it is true that the State has the burden to prove beyond a reasonable doubt that the defendant was not acting in self-defense when the defendant puts forth such a theory, see *Jennings*, 363 Ga. App. at 173 (1), it is also true that a jury "is free to reject any evidence in support of a justification defense and to accept

4

the evidence that the shooting was not done in self-defense," *Anthony v. State*, 298 Ga. 827, 829 (1) (785 SE2d 277) (2016).

Here, viewing the evidence in the light favorable to the verdict, the jury was authorized to conclude beyond a reasonable doubt that Hobbs was not justified in using deadly force to protect himself against Hicks. The evidence showed that: Hobbs was trespassing on Manire's family property; Hicks and Manire believed Hobbs was returning to steal more items from Hicks' trailer; Hicks was unarmed and walked with the assistance of a cane; Hobbs beat Hicks extensively with something rectangular in shape; and that, after beating Hicks and shooting him one time, Hobbs stood over Hicks and said "I give up," before shooting Hicks a second time. "Despite any evidentiary conflicts, the jury was free to disbelieve [Hobbs'] claim of self-defense and to find that [he] was so influenced and excited that [he] reacted passionately rather than simply to defend [him]self when [he] shot and killed [Hicks]." *Aeger v. State*, 356 Ga. App. 667, 671 (1) (848 SE2d 677) (2020).

2. Hobbs also alleges that the State committed prosecutorial misconduct during closing arguments by arguing that Hobbs had "pistol-whipped" Hicks when, Hobbs argues, there was no evidence presented at trial to support such an argument. Hobbs concedes that he did not object to the prosecutor's statement, but argues that his claim

5

is subject to plain error review. We disagree, as it is well settled that plain error review does not apply to such a claim. See *Shepard v. State*, 347 Ga. App. 306, 307 (819 SE2d 300) (2018). Accordingly, this claim is waived for appellate review.

*Judgment affirmed. Dillard, P. J., and Rickman, J., concur*.