NOTICE: This opinion is subject to modification resulting from motions for reconsideration under Supreme Court Rule 27, the Court's reconsideration, and editorial revisions by the Reporter of Decisions. The version of the opinion published in the Advance Sheets for the Georgia Reports, designated as the "Final Copy," will replace any prior version on the Court's website and docket. A bound volume of the Georgia Reports will contain the final and official text of the opinion.

In the Supreme Court of Georgia

Decided: August 26, 2025

S25A0773.  MACK v. THE STATE.

PINSON, Justice.

Bernie Mack was convicted of malice murder and other crimes related to the shooting deaths of Bridget Brooks-Mack and Jeremy Santos.[1] On appeal, he argues that the evidence was not sufficient

---

[1] The crimes occurred on May 5, 2022. Mack was indicted by a Gwinnett County grand jury on August 3, 2022. The grand jury charged him with two counts of malice murder (Counts 1 and 5); two counts of felony murder (Counts 2 and 6); two counts of aggravated assault (Counts 3 and 7); and two counts of possession of a firearm during the commission of a felony (Counts 4 and 8). His jury trial began on April 8, 2024, and ended on April 12, 2024. The jury found Mack guilty on Count 1; Counts 2 and 3 merged or were vacated by operation of law as a result. The trial court sentenced Mack to life without parole on Count 1. On Count 5, the jury found Mack guilty of the lesser offense of voluntary manslaughter. Counts 6 and 7 merged or were vacated by operation of law. The trial court sentenced Mack to 20 years of confinement on Count 5, consecutive to the sentence on Count 1. The jury also found Mack guilty of Counts 4 and 8, the two possession of a firearm offenses. The trial court imposed a sentence of five years confinement on each of those counts, with each sentence to run consecutive to Count 5. Mack filed a motion for new trial that was denied by the trial court on October 31, 2024. Mack then timely appealed to this Court. The case was docketed to this Court's April 2025 term and submitted for a decision on the briefs.

and that the trial court erred in admitting certain expert testimony. These claims fail: the evidence was sufficient and any error related to the expert testimony was harmless. So Mack's convictions are affirmed.

1. The evidence presented at trial showed the following. Brianna and her husband, Jeremy, lived close to Bridget (Brianna's mother) and her husband, Mack (Brianna's stepfather). The family members saw each other regularly, and Brianna's children would often spend time with their grandparents.

On May 2, 2022, the family was at a baseball game that one of Brianna's sons was playing in. Their team won the game, and parents stayed at the field to celebrate afterwards. While at the field, Mack got into an argument with parents of other children. Jeremy tried to intervene, and Mack began to argue with him too. Brianna testified that, when Bridget tried to intervene to calm things down, Mack pushed her. Brianna defended her mother by punching Mack in the face. After the punch, the couples separated and went to their respective homes.

Two days later, Mack bought a handgun, and he applied for a carry permit the day after that, May 5.

On the evening of May 5, Brianna called Mack, concerned that she had not heard from her mother for several hours. Brianna told another family member that she could not reach her mom, and he also called Mack. Both he and Brianna testified that Mack said that he had gone walking in Stone Mountain and would go back to his home soon. On one call, he said that Bridget was in the shower when he left the home.

Brianna and Jeremy eventually decided to go to Bridget's home to check on her. When they arrived, they entered the house and could not find Bridget anywhere. When they attempted to enter the basement, they found the door locked. The key that was usually hidden nearby was missing, so they pried the door open with a knife, and Jeremy went downstairs. He immediately came back up and told Brianna that her mother was dead. He took Brianna outside, and the couple called 911 from their car. As they began to drive away, they saw Mack's car returning to the home.

At that point, Jeremy took out his own handgun and fired at Mack's vehicle. The couple continued to drive away, but they eventually stopped so Jeremy could exit the car. After he got out, Brianna drove off. Mack was not far behind them, and he turned onto the street where Jeremy was now on foot shortly after Jeremy got out of the car. After turning onto the street, Mack got out of his car as well. He then began to chase Jeremy, and the pair exchanged gunfire. Jeremy was ultimately struck and killed by several bullets; Mack was unharmed.

A resident of a nearby home who had heard the shots came to the scene after Jeremy had already been shot. He shouted at Mack to drop his gun. Mack dropped it, returned to his car, and drove across the street to a parking lot. He then got out of his car and stayed there until police arrived and arrested him. On doing so, the police found two spent bullet casings in Mack's pocket.

The medical examiner who conducted Bridget's autopsy testified that she died of two gunshot wounds. She testified that the first shot entered Bridget's abdomen from an indeterminate range. Soot

marks at the back of her neck, however, indicated that the gun had been pressed against the back of her head when it was fired a second time.

Mack testified in his own defense at trial. He claimed that he bought the gun only because he noticed that the two guns the couple owned were missing from their master closet. After buying the handgun, he testified that he kept it with him in the basement on May 5. He testified that he was listening to music when he heard the basement door open. He stood up, grabbing his gun. After Bridget reached the landing of the staircase, Mack said that he recognized that it was his wife coming down the stairs, so he put the gun in the waistband of his pants. After she came down the stairs, he then claimed that the gun fell from his waistband onto the floor as he went to move past Bridget and go upstairs. Mack testified that he and Bridget both bent down and reached for the gun; he grabbed it, but her hand was on his; and as they stood up, the gun went off. He testified that he then held on to Bridget and asked where she was hit. According to Mack, the gun was still in his hand, and Bridget's

hand was still on his. He claimed that the gun accidentally discharged again when he "threw her down."

Mack further testified that, after shooting of Bridget, he took the two spent bullet casings from the basement floor and put them in his pocket. After grabbing the casings, Mack left the basement and got in his car. He testified that he was going to call the police after the shooting but that he was in shock and got in his car and went driving. A neighbor testified that Mack stopped him and asked him to deliver an envelope to the post office during this time.

Mack also testified that he was shot at from another car when he was returning to his home. He claimed that, although he initially drove away from the other vehicle, he turned around out of concern for having a shootout at his house. After turning around, he eventually came upon the vehicle and Jeremy already standing in the street. He testified that Jeremy ran towards him with a gun in hand, which is why Mack took out his own gun out, got out of the car, and traded shots with Jeremy. Mack claimed that Jeremy pursued him, that Jeremy shot first in the foot chase, and that he only shot Jeremy

6

out of self-defense.

2. Mack first contends that the evidence was insufficient to sustain his convictions as a matter of federal due process. When reviewing the evidence for constitutional sufficiency, we evaluate it "in the light most favorable to the verdicts to determine whether a rational trier of fact could have found the defendant guilty beyond a reasonable doubt." *Arnold v. State*, 321 Ga. 434, 442 (2025). In doing so, we "defer to the jury's resolution of any conflicts in the evidence, the credibility of witnesses, and the drawing of reasonable inferences from the facts." Id. And the jury's verdicts "will be upheld as long as some competent evidence, even if contradicted, supports each fact necessary to make out the State's case." Id.

As to the malice murder of Bridget, Mack contends that the State did not introduce sufficient evidence that he killed her intentionally. See OCGA § 16-5-1 (a) ("A person commits the offense of murder when he unlawfully and with malice aforethought, either express or implied, causes the death of another human being."); *Scoggins v. State*, 317 Ga. 832, 836 (2023) ("For a malice murder

7

conviction, the requisite criminal intent is that of malice, which in-corporates the intent to kill."). Not so. Viewed in the light most favorable to the verdict, the evidence here showed that Mack shot Bridget first in the abdomen, put the gun against the back of her head and shot her a second time, then picked up the two bullet casings, left her body lying in the basement, fled the scene in his car, lied to two different people about where he was when they called asking about Bridget, and never called the police. Based on this evidence, the jury was authorized to find beyond a reasonable doubt that Mack shot and killed Bridget intentionally and with malice, and to disbelieve his testimony that he shot her on accident. See *Jones v. State*, 314 Ga. 400, 406–07 (2022) (evidence authorized the jury to reject the defendant's defense of accident); *Donaldson v. State*, 302 Ga. 671, 673 (2017) ("[I]t is the role of the jury to resolve conflicts in the evidence and to determine the credibility of witnesses, and the resolution of such conflicts adversely to the defendant does not render the evidence insufficient.").

As for the voluntary manslaughter of Jeremy, Mack contends

8

that the State failed to introduce sufficient evidence disproving his defense of self-defense, which was based on his theory that Jeremy was the initial aggressor and that the threat of deadly force posed by Jeremy never subsided. See OCGA § 16-3-21(a) ("[A] person is justified in using force which is intended or likely to cause death or great bodily harm only if he or she reasonably believes that such force is necessary to prevent death or great bodily injury to himself or herself …."). But both Brianna and neighbors testified that, after Jeremy initially shot at Mack, she and Jeremy then drove away, that they were out of Mack's sight, and that Mack pursued them first in his car and then on foot. In short, the evidence authorized the jury to conclude that Jeremy no longer posed a threat to Mack that would justify the use of force in self-defense, and so Mack was not justified in using deadly force to defend himself by the time he shot and killed Jeremy. See *Anthony v. State*, 298 Ga. 827, 829 (2016) ("The jury is free to reject any evidence in support of a justification defense and to accept the evidence that the shooting was not done in self-defense.").

Mack also contends that the evidence was not sufficient as a matter of Georgia statutory law because it was wholly circumstantial and failed to exclude the reasonable hypothesis of accident for Bridget's murder and self-defense for Jeremy's murder. See OCGA § 24-14-6 ("To warrant a conviction on circumstantial evidence, the proved facts shall not only be consistent with the hypothesis of guilt, but shall exclude every other reasonable hypothesis save that of the guilt of the accused."). But this standard does not apply if there is direct evidence of the crime, see *Troutman v. State*, 320 Ga. 489, 492 (2024), like Mack's own testimony that he shot his wife and Jeremy, see *Bradley v. State*, 318 Ga. 142, 144 (2024) ("Eyewitness testimony based on the witness's firsthand observations of the crime is direct, not circumstantial, evidence."). So this final sufficiency argument fails as well.

3. Mack finally contends that the trial court erred in admitting certain expert testimony.

Bridget was shot twice, and the medical examiner testified that

the gunshot to Bridget's head happened after the gunshot to her abdomen. The medical examiner opined that blood loss from the abdomen was inconsistent with her having been shot in the head first. And she explained that if the first shot had been to Bridget's head, Bridget likely would have fallen forwards, and so it would be unlikely that the entry wound from the second bullet would be to the front of her abdomen, as it was. Then the medical examiner added, "I guess less scientific, but typically, when individuals are shot more than one time, they are typically shot from further away and then moved closer. And so not only based on my anatomic or scientific findings . . . , it makes more sense that [the abdominal] wound was inflicted first." Mack's counsel objected on the ground that this latter testimony was not within the expert's area of expertise, and the trial court overruled the objection.

On appeal, Mack contends that this testimony was admitted in error and invaded the province of the jury to determine the facts and the ultimate issue in the case in violation of OCGA § 24-7-704(b).

Assuming without deciding that the trial court abused its discretion in admitting this testimony, any error was harmless. The test for whether a non-constitutional error is harmless is "whether it is highly probable that the error did not contribute to the verdict." *Haufler v. State*, 315 Ga. 712, 718 (2023). When applying this test, we "review the evidence de novo and weigh it as a reasonable juror would, rather than reviewing it in a light most favorable to upholding the jury's verdicts of guilty." *Moore v. State*, 315 Ga. 263, 271 (2022).

Applying this standard here, it was highly probable that the medical examiner's comment did not contribute to the verdict. To begin with, this testimony about the order of the shots was cumulative of her unchallenged expert testimony about the physiological evidence that supported her conclusion about the order of the gunshots and Mack's own trial testimony that the shot to the abdomen happened first. See *Remler v. State*, 318 Ga. 61, 66–67 (2024) (expert's improper testimony was harmless when cumulative of other evidence). Moreover, this testimony did not have any bearing on the

expert's more inculpatory testimony: that the second gunshot was point-blank to the back of Bridget's head rather than to the front, which tended to disprove Mack's claim that he shot her by accident. So it is highly probable that the expert's passing comment about the order of the shots did not contribute to the jury's verdict. And that conclusion is confirmed by the other evidence of Mack's guilt already recounted, which, when weighed as a reasonable juror would, was quite strong. See *Munn v. State*, 313 Ga. 716, 726 (evidence was harmless when evidence of guilt, including defendant's admission to the shooting, was overwhelming). Because any error was harmless, this claim fails.

*Judgment affirmed. All the Justices concur.*