**THIRD DIVISION**
**ANDREWS, P. J.,**
**DILLARD and MCMILLIAN, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**January 24, 2014**

# In the Court of Appeals of Georgia

A13A2297. NILES v. THE STATE.

ANDREWS, Presiding Judge.

James Niles was found guilty in a bench trial of possession of cocaine with intent to distribute in violation of OCGA § 16-13-30 (b) and possession of less than one ounce of marijuana in violation of OCGA §§ 16-13-30 (j) and 16-13-2 (b). The prosecution and defense stipulated to conduct the trial based on evidence produced at the hearing on Niles's pre-trial motion to suppress evidence found by police during a search of his residence. Niles's sole enumeration of error is that the trial court erred by denying his motion to suppress the evidence supporting the guilty verdict. We find no error and affirm.

The stipulated evidence showed the following: Uniformed DeKalb County police responded to an anonymous complaint that illegal narcotics sales might be

occurring at a DeKalb County residence. Police went to the residence intending to knock on the front door to investigate the complaint. As they approached the residence, police saw a man exiting the front door who identified himself as Terrance Grant. During a conversation outside the residence, police asked Grant if he lived at the residence. Grant responded that his brother, Niles, lived at the residence, and that, although he (Grant) did not sleep there, he had keys and access to the residence and had a bedroom at the residence where he stored his work tools. Grant told police that he was there to pick up some work tools. Police asked Grant if Niles was present at the residence, and Grant said Niles was not there. At that point, police asked Grant for consent to walk through the residence for the purpose of ensuring that no one else was present at the residence, and Grant consented. Pursuant to Grant's consent, police walked through the residence while calling out "DeKalb Police" but found no one else present. During the walk-through, police saw that one bedroom in the residence contained Grant's work tools, and that another bedroom contained a bed and clothing. In conducting the walk-through, police entered the front door into a common living room area which provided access to a common hallway. While walking down the hallway, police passed an open closet located directly across the hallway from the bedroom containing the bed. From the hallway, police saw in the closet in plain view

2

suspected crack cocaine and marijuana. Based on the suspected contraband seen in plain view during the walk-through of the residence, police immediately applied to the DeKalb County Magistrate Court for a warrant to search the residence. The Magistrate Court issued a search warrant, and police re-entered the residence with the warrant and seized the suspected contraband from the hallway closet. Also in the closet, police found various written documents belonging to Niles, and items commonly used to sell narcotics – a digital scale with cocaine residue and plastic baggies. Items belonging to Niles were also found in the bedroom containing the bed. The suspected cocaine tested positive for cocaine at the State Crime Lab, and the suspected marijuana was identified as marijuana by a police expert in the identification of marijuana. Niles does not contest that the stipulated evidence admitted over his motion to suppress was sufficient to support the guilty verdict.

Niles contends that the trial court should have granted his motion to suppress because his brother, Grant, lacked authority (or apparent authority) to give consent for the police to enter his residence to do the initial walk-through. Accordingly, Niles contends that, because police were illegally in the residence for the walk-through when they saw the cocaine and marijuana in plain view, there was no legal basis to use this information to obtain the subsequent warrant to search the residence for the

3

cocaine, marijuana, and other seized items. The trial court denied the motion to suppress on the basis that: (1) the evidence showed a sufficient basis for Grant to give the officers consent to enter the residence for the initial walk-through; or (2) even if Grant did not in fact have authority to give consent for the police to enter the residence for this purpose, the police reasonably relied upon Grant's apparent authority to give consent.

> The Fourth Amendment generally prohibits the warrantless entry of a person's home, whether to make an arrest or to search for specific objects. The prohibition does not apply, however, to situations in which voluntary consent has been obtained, either from the individual whose property is searched, or from a third party who possesses common authority over the premises.

*Illinois v. Rodriguez*, 497 U. S. 177, 181 (110 SCt 2793, 111 LE2d 148) (1990). (citations and punctuation omitted). Common authority justifying third-party consent for police to enter the premises rests

> on mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of the co-inhabitants has the right to permit the inspection in his own right and that the others have assumed the risk that one of their number might permit the common area to be searched.

*United States v. Matlock*, 415 U. S. 164, 171 n. 7 (94 SCt 988, 39 LE2d 242) (1974). The State has the burden to establish that the consenting third party has such common

4

authority. *Rodriguez*, 497 U. S. at 181. But even if the consenting third party did not in fact have authority to give consent to enter, where police reasonably believed that the third party had such authority, this constitutes apparent authority which validates the entry. Id. at 182.

> As with other factual determinations bearing upon search and seizure, determination of consent to enter must be judged against an objective standard: would the facts available to the officer at the moment warrant a man of reasonable caution in the belief that the consenting party had authority over the premises? If not, then warrantless entry without further inquiry is unlawful unless authority actually exists. But if so, the search is valid.

Id. at 188-189 (citation and punctuation omitted).

We need not address the issue of apparent authority because we conclude that the State carried the burden of establishing that Grant did in fact have authority to consent for police entry to the residence and the common hallway in the residence from which the contraband in the open closet was seen in plain view. In response to police inquiry, Grant told the officers that he had a key and access to the residence; had a bedroom at the residence where he kept his work tools; and that his brother, Niles, lived at the residence. Although this information may not have been a sufficient basis to show that Grant had common authority over any portion of the residence exclusively occupied by Niles, it was sufficient to establish that Grant had common

authority – joint access or control for most purposes – over common areas in the residence such as the hallway. Given that Grant had a key and access to the residence and use of a bedroom at the residence, it is reasonable to conclude that he had joint access with Niles to the common areas in the residence; authority to permit police entry into those areas; and that Niles assumed the risk Grant might consent to such entry. See 4 LaFave, Search and Seizure, § 8.3 (f) (5th ed.) (discussing necessity of considering consenting party's authority over the particular area searched and recognizing that "[s]ome portions of premises are shared more than others and in different ways; some are shared wholly and some are not at all.").

Because police were lawfully in the common hallway pursuant to valid consent, they were lawfully in a position to see the contraband in plain view in the open closet. *Wesson v. State*, 279 Ga. App. 428, 431-432 (631 SE2d 451) (2006). It follows that police used lawfully obtained evidence of the contraband seen in the residence as a proper basis for obtaining the warrant to enter and search the entire residence.

*Judgment affirmed. Dillard and McMillian, JJ., concur.*