**FOURTH DIVISION**
**ELLINGTON, P. J.,**
**BRANCH and MERCIER, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**July 12, 2016**

# In the Court of Appeals of Georgia

A16A0047. THE STATE v. RUCKER.

BRANCH, Judge.

A trial court granted Charles Rucker's motion to suppress a handgun recovered in a warrantless search of the camper where he lived while on probation. On appeal from that ruling, the State argues that the trial court erred when it granted the motion because Rucker had agreed that his residence could be searched without a warrant as a condition of his probation and because the search was not unreasonable. We conclude that under the circumstances of this search, which include Rucker's valid waiver of his Fourth Amendment rights, neither the officers' entry by invitation into the camper's front room nor their seizure of the handgun they saw in plain view from that room can be said to be unreasonable. We therefore reverse.

When the facts material to a motion to suppress are disputed, it generally is for the trial judge to resolve those disputes and determine the material facts. This principle is a settled one, and this Court has identified three corollaries of the principle, which limit the scope of review in appeals from a grant or denial of a motion to suppress in which the trial court has made express findings of disputed facts. First, an appellate court generally must accept those findings unless they are clearly erroneous. Second, an appellate court must construe the evidentiary record in the light most favorable to the factual findings and judgment of the trial court. And third, an appellate court generally must limit its consideration of the disputed facts to those expressly found by the trial court.

*Hughes v. State*, 296 Ga. 744, 746 (1) (770 SE2d 636) (2015) (citations, punctuation and footnotes omitted).

Thus viewed in favor of the trial court's factual findings and judgment, the record shows that on September 26, 2014, a narcotics investigator with the Jackson County Sheriff's Office received an anonymous tip that Rucker was involved in the sale of illegal narcotics from his residence on Apple Valley Road. The investigator also learned that Rucker was on probation for possession of methamphetamine, a

felony,[1] and had signed a waiver of rights as a condition of his probation that provided as follows:

> The undersigned does hereby agree and consent to waive his/her [F]ourth [A]mendment rights, agreeing to wit: that his/her person, property, residence, vehicle(s), and papers may be searched without a warrant. Said consent being an agreed[-]upon condition of his/her probation.

Later on the same day, the three officers went to Rucker's residence, a camper about 15 feet wide parked on an open lot.[2] When the officers knocked on the back door of the camper, a woman asked who was there. When the officers identified themselves, the woman responded that she had to put on some clothes before she could come to the door. When the clothed woman appeared at the door moments later, the officers told her that they were investigating complaints of "possible narcotic activity in the area" and asked if they could "come inside and speak with her," to which the woman agreed.

---

[1] See OCGA § 16-13-30 (c) ("Except as otherwise provided, any person who violates subsection (a) of this Code section with respect to a controlled substance in Schedule I or a narcotic drug in Schedule II shall be guilty of a felony").

[2] There is no dispute that the officers believed that the camper was Rucker's residence and that it was in fact his residence.

Once inside the living room, the officers confirmed by "glanc[ing] around the house" that Rucker was not present. From the same vantage point in the living room, however, one of the officers saw a black revolver on what appeared to be a nightstand in the adjoining bedroom. An officer estimated that the nightstand was "seven or eight feet" from the front door of the camper. When the woman told the officer that the gun did not belong to her but rather to Rucker, the officer entered the bedroom, took the revolver, and advised the woman that they were going to obtain a search warrant for a search of the entire camper. On hearing this, the woman said, "If you're going to get a search warrant, we have this in here," and handed the officers a marijuana grinder containing a small amount of methamphetamine and a marijuana pipe in the jar of the grinder. The woman also told the officers that she and Rucker were "staying together" in the camper, had been in "a relationship for a short amount of time," and that she was sleeping in the same room as Rucker. After one of the officers obtained a search warrant, which they considered "err[ing] on the side of caution" in light of Rucker's written waiver, the officers also seized empty butane cans, a propane torch, some hypodermic needles, and a saw. The officers then obtained an arrest warrant for Rucker, who was arrested the next day at a chemical plant nearby.

Rucker was charged with possession of methamphetamine and possession of a firearm by a convicted felon. At the hearing on Rucker's motion to suppress, the parties stipulated that the drug possession charge had been dismissed for reasons unrelated to the validity of the search of the camper. After hearing testimony from all three officers, the trial court filed a written order including the following factual findings:

– The police officers "did not articulate any reasonable or good-faith suspicion for the search," the only basis for which was an "unverified" and "anonymous tip."

– The officers "could not provide any definitive reason for believing the home belonged to" Rucker and that they "had no information about the [woman] at the residence, including whether she lived there."

– The "only evidence in the record" that the woman answering the door had authority to give consent was "the testimony that there was some clothing belonging to a [woman] inside the residence and that she may have been staying there."

On the basis of these findings, the court held that notwithstanding Rucker's written waiver, there was "no authority" for the search of his residence in his absence, and "no reliance" on that waiver was possible "because [police had] no reasonable good-

faith suspicion" for their search. The court also held that even if the officers did have authority to search, their obtaining of the handgun was "so close in time and space to the[ir] illegal entry" that there were "no intervening circumstances" to attenuate the conclusion that the evidence was properly suppressed as fruit of the poisonous tree.

The State argues that the trial court erred as a matter of law when it concluded that the search of the camper was unreasonable and therefore illegal. We agree.

As a preliminary matter, we cannot accept the trial court's clearly erroneous factual findings that the officers had "no information" about the woman who answered the door of Rucker's camper or that the "only evidence in the record" supporting a conclusion that she had authority to give consent was testimony that she had clothing there and "may have been staying there." The woman's presence alone in the camper was some evidence of her authority to give consent, and the woman told the officers shortly after they entered, but after they had seen the handgun at issue, that she was involved in a relationship with Rucker and had been sharing a bedroom with him in the camper. We are aware that "we generally must presume that the absence of a finding of fact that would tend to undermine the conclusion of the trial court reflects a considered choice to reject the evidence offered to prove that fact[.]" *Hughes*, 296 Ga. at 747 (1). We may reject a clearly erroneous finding of fact,

6

however, id. at 746 (1), and there is nothing in the record before us to contradict the woman's account of her relationship with Rucker. Even if the trial court was entitled to disbelieve the officers' testimony as to what the woman told them on this subject, then, the court was not entitled to mischaracterize the record as not including such information – an error that weakens our confidence in the trial court's ultimate legal conclusion. See *State v. Porter*, 288 Ga. 524, 526 (2) (a) (705 SE2d 636 (2011) (when a trial court "has clearly erred in some of its findings of fact and/or has misapplied the law to some degree, the deference owed the trial court's ultimate ruling is diminished.").

Next, the law governing a warrantless entry into or search of a probationer's residence is clear. "If a warrantless search has occurred pursuant to a special condition of probation, a reviewing court [must] analyze the facts and circumstances to determine whether the search in question was based upon reasonable grounds, balancing the government's need to search against the invasion caused by the warrantless search." *Harrell v. State*, 253 Ga. App. 440, 442 (2) (559 SE2d 155) (2002). "A search conducted pursuant to a special condition of probation need not be made as a routine incident of the probation supervision process. The rule is that there must be some conduct reasonably suggestive of criminal activity to trigger the

search." *Rocco v. State*, 267 Ga. App. 900, 903 (2) (601 SE2d 189) (2004) (punctuation and footnote omitted). Such a search "can be prompted by a good-faith suspicion, arising from routine police investigative work." Id. Thus,

> as a general rule, the police can search a probationer, who is subject to a waiver of Fourth Amendment rights as a special condition of probation, at any time, day or night, and with or without a warrant, *provided there exists a reasonable or good-faith suspicion for search, that is, the police must not merely be acting in bad faith or in an arbitrary and capricious manner (such as searching to harass [a] probationer)*.

*Hess v. State*, 296 Ga. App. 300, 302 (2) (674 SE2d 362) (2009) (punctuation and footnote omitted; emphasis supplied); see also *Brooks v. State*, 292 Ga. App. 445, 449 (2) (664 SE2d 827) (2008).

Given that Rucker does not challenge the validity of his written waiver of his Fourth Amendment rights, the only issue before us is whether police acted in bad faith or in an arbitrary or capricious manner when, acting on the basis of an anonymous tip and with the knowledge that Rucker was on probation for a drug offense and had signed a valid waiver of his Fourth Amendment rights, they (a) knocked on the door of the camper, (b) entered the camper by the invitation of the

8

woman who answered the door in Rucker's absence, and (c) saw and seized the handgun at issue from the bedroom.

(a) *Written Waiver, Anonymous Tip, and Approach to the Camper*. It is undisputed that these officers received an anonymous tip that Rucker was selling narcotics at his residence and established that Rucker had waived his Fourth Amendment rights as a condition of his probation for selling methamphetamine. The officers acted on this information by going to Rucker's residence in order to conduct what this Court has called a "permissible knock-and-talk procedure," which did not in itself amount to a search or seizure. *Herring v. State*, 279 Ga. App. 162, 164 (630 SE2d 776) (2006) (officers were authorized to knock on a defendant's house door after receiving an anonymous tip of drug activity at a house); see also *Pickens v. State*, 225 Ga. App. 792, 793 (484 SE2d 731) (1997) (police officer was authorized to knock on defendant's door without an articulable suspicion in order to investigate a report of a crime). It is also undisputed that the camper was actually Rucker's residence, and there is no evidence in the record before us that the officers used trickery to gain entrance to the camper or that their purpose in going there was to harass Rucker. See *Herring*, 279 Ga. App. at 164 (noting absence of evidence that officers gained access via consent by ruse or trickery).

9

This Court has repeatedly held, moreover, that a defendant's status as a probationer for drug offenses and that defendant's execution of a Fourth Amendment waiver as a special condition of probation are relevant to a determination whether an officer is acting reasonably or in good faith in initiating a search of the probationer's residence. In *Hess v. State*, 296 Ga. App. 300 (674 SE2d 362) (2009), for example, we held that police were authorized to act on an anonymous tip to search the room in his mother's house where a defendant was living. Id. at 302 (2). Among the totality of circumstances that we held as supporting the trial court's denial of the defendant's motion to suppress were his probationary status for drug offenses and the mother's consent to the search. Id.; see also *Brooks*, 292 Ga. App. at 449-450 (2) (when probationer had waived his Fourth Amendment rights and complained to police that he was being watched, a warrantless search of probationer pursuant to two anonymous tips was not unreasonable); *Rocco*, 267 Ga. App. at 903 (2) (affirming denial of a motion to suppress in the absence of any evidence that officers "acted in bad faith or in an arbitrary or capricious manner or solely to harass" a probationer when they went to his house to investigate a tip that he was "still involved in drug activity"); *Prince v. State*, 299 Ga. App. 164, 170 (3) (b) (682 SE2d 180) (2009) (officers pursuing an anonymous tip were "were authorized to investigate whether [a

10

probationer] possessed drugs while on probation pursuant to his valid [Fourth Amendment] waiver" and were therefore lawfully present at the side door of his residence).

In this case, evidence supporting the officers' decision to investigate the anonymous tip included Rucker's status as a probationer on drug charges and his execution of a valid waiver of his Fourth Amendment rights; the officers undertook an authorized knock-and-talk procedure that did not amount to a search; and there is no evidence in the record to justify a conclusion that they acted in bad faith or with the intent to harass Rucker when they did so. The trial court therefore erred when it concluded that the officers had no reasonable good faith suspicion. On the contrary, the officers acted properly when they engaged in a knock-and-talk at the door of Rucker's camper.

(b) *Consent.* It is well-established that when the State "'seeks to justify a warrantless search by proof of voluntary consent, it is not limited to proof that consent was given by the defendant, but may show that permission to search was obtained from a third party who possessed *common authority over or other sufficient relationship to* the premises or effects sought to be inspected.'" *Hall v. State*, 239 Ga. 832, 832-833 (1) (238 SE2d 912) (1977) (emphasis supplied), quoting *United States*

11

*v. Matlock*, 415 U. S. 164, 171 (94 SCt 988, 39 LE2d 242) (1974). "The State has the burden to establish that the consenting third party has such common authority." *Niles v. State*, 325 Ga. App. 621, 623 (754 SE2d 406) (2014), citing *Illinois v. Rodriguez*, 497 U. S. 181, 182 (110 SCt 2793, 111 LE2d 148) (1990).

> Common authority justifying third-party consent for police to enter the premises rests "on mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of the co-inhabitants has the right to permit the inspection in his own right and that the others have assumed the risk that one of their number might permit the common area to be searched."

*Niles*, 325 Ga. App. at 622-623, quoting *Matlock*, 415 U.S. at 171 n. 7. But "even if the consenting third party did not in fact have authority to give consent to enter, where police reasonably believed that the third party had such authority, this constitutes apparent authority which validates the entry." *Niles*, 325 Ga. App. at 623, citing *Rodriguez*, 497 U. S. at 182.

> "As with other factual determinations bearing upon search and seizure, determination of consent to enter must be judged against an objective standard: would the facts available to the officer at the moment warrant a man of reasonable caution in the belief that the consenting party had authority over the premises? If not, then warrantless entry without

further inquiry is unlawful unless authority actually exists. But if so, the search is valid."

*Niles*, 325 Ga. App. at 623, quoting *Rodriguez*, 497 U. S. at 188-189 (citation and punctuation omitted).

As we have already noted, this trial court mischaracterized the record when it found "no information" in the record concerning the woman's status as a resident of the camper. As the trial court acknowledged, moreover, the woman's claim that she was living there with Rucker, which was never disputed or disproved, distinguishes this case from *Hunt v. State,* 302 Ga. App. 578, 581 (691 SE2d 368) (2010). There, we reversed the denial of a homeowner's motion to suppress on the ground that an occupant of the house told police that he did *not* live in the house such that he had no apparent authority to consent to a warrantless search. Id. at 580 (1).

Here, by contrast, and even assuming that the trial court discounted all the testimony tending to establish that the woman had actual common authority to grant access to the living room of the camper, there was no evidence to support a conclusion that these officers acted in an objectively unreasonable way when they concluded that the woman who invited them inside its common area had "common authority or other sufficient relationship with the property" such that they could enter.

13

*Hall*, 238 Ga. at 833. The trial court therefore erred when it concluded that these officers made an illegal entry into the camper's front room. See *Ford v. State*, 214 Ga. App. 284, 286-287 (3) (447 SE2d 334) (1994) (defendant's sister had sufficient authority and control to consent to a search of her entire apartment, including the bedroom where the defendant was staying); *Niles*, 325 Ga. App. at 622, 623 (evidence that a defendant's brother had "a key and access to the residence and use of a bedroom" was sufficient to establish that the resident had "common authority" over "common areas in the residence," including the hallway from which police saw the contraband at issue); *Luke v. State*, 178 Ga. App. 614, 618 (344 SE2d 452) (1986) (affirming denial of motion to suppress when defendant's wife "obviously possessed" authority to give consent to search residence she shared with husband).

(c) *Plain View*. It is also undisputed that the officers responded to the woman's request to enter the camper only to the extent of entering its front room, "an area where a visitor would normally be received." Wayne R. LaFave, *Search and Seizure* (5th ed. 2012), § 8.5 (e), vol. 4, p. 312, citing *United States v. Turbyfill*, 525 F.2d 57, 59 (8th Cir. 1975) (no error in trial court's finding that a house occupant's acts of opening a door to police and stepping back from it "constituted an implied invitation to enter" the front room of the house, from which officers saw the contraband at issue

14

in plain view). Because police were lawfully in this camper's entry area pursuant to the woman's invitation to enter that part of the camper, "they were lawfully in a position to see the contraband in plain view" in the bedroom. *Niles*, 325 Ga. App. at 624 (citation omitted); see also *Prince*, 299 Ga. App. at 170 (3) (b) (officers pursuing an anonymous tip were lawfully present at the side door of the residence of a probationer who had executed a valid Fourth Amendment waiver, from which position officers saw the contraband at issue in plain view).

In sum, "although we owe substantial deference to the way in which the trial court resolved disputed questions of material fact, we owe no deference at all to the trial court with respect to questions of law, and instead, we must apply the law ourselves to the material facts." *Hughes*, 296 Ga. at 750 (2) (citation omitted). As we have noted, there is nothing in the record before us to support a determination that officers were acting unreasonably or in an arbitrary, capricious, or harassing way when they followed up on an anonymous tip concerning a known drug offender and felon who had executed a valid waiver of his Fourth Amendment rights by going to the residence named in the tip and accepting an occupant's invitation to enter the front room of that residence, from which they saw a handgun in the bedroom only seven or eight feet away. Thus the totality of the circumstances here, including the

15

routine investigation of a tip concerning drug activity at a probationer's house, gave these officers "a sufficiently reasonable or good-faith suspicion for the search so that the officers were not acting in an arbitrary, capricious, or harassing manner" as a matter of law. *Hess,* 296 Ga. App. at 302 (2). The trial court therefore erred when it granted the motion to suppress the handgun at issue here. See id. (affirming denial of motion to suppress when probationer's mother gave consent to search his room); *Brooks*, 292 Ga. App. at 450 (2) (noting absence of evidence to support any finding of harassment by officers conducting a search of probationer's residence); *State v. West*, 237 Ga. App. 185, 186-187 (514 SE2d 257) (1999) (reversing grant of motion to suppress when defendant's mother had the authority to consent to a search of her home, including the bedroom she permitted her son to use for free); *Ford*, 214 Ga. App. at 286-287 (3) (affirming denial of motion to suppress when police reasonably believed that defendant's sister had authority to give consent to search apartment bedroom where drugs were found).

*Judgment reversed. Ellington, P. J., and Mercier, J., concur in judgment only*.