**FIRST DIVISION**
**BARNES, P. J.,**
**MERCIER and BROWN, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**May 21, 2019**

# In the Court of Appeals of Georgia

A19A0429. MASSEY v. THE STATE.

BROWN, Judge.

Jonathan Shane Massey was indicted in Newton County for two counts of child molestation, one count of invasion of privacy, and twenty-three counts of sexual exploitation of children. Massey also was indicted in Walton County for four counts of sexual exploitation of children and one count each of manufacture of marijuana, possession of a firearm during the commission of a felony, and possession of a firearm by a convicted felon. Massey waived venue as to the Walton County offenses and consented to have both indictments tried jointly in Newton County. Following a bench trial, the trial court convicted Massey of all charges. Massey appeals the denial of his amended motion for new trial, arguing that the trial court erred in denying his motions to suppress unlawfully seized evidence. For the reasons

explained below, we affirm the trial court's denial of Massey's motion to suppress evidence underlying the Newton County charges, but dismiss for lack of jurisdiction, Massey's challenge to the trial court's denial of his motion to suppress evidence underlying the Walton County charges.

1. "It is incumbent upon this Court to inquire into its own jurisdiction, even when not contested by the parties." (Citations and punctuation omitted.) *Clifton v. State*, 346 Ga. App. 406, 407 (814 SE2d 441) (2018) (physical precedent only). A criminal case remains pending until the court enters a written judgment of conviction and sentence. *Keller v. State*, 275 Ga. 680, 680-681 (571 SE2d 806) (2002). See also *Curry v. State*, 248 Ga. 183, 185 (4) (281 SE2d 604) (1981) ("[a]n oral declaration as to what the sentence shall be is not the sentence of the court; the sentence signed by the judge is"). "In the absence of a final order, we are constrained to hold that no final judgment has been entered in the case and jurisdiction remains vested in the trial court." *Okross v. State*, 205 Ga. App. 694, 695 (423 SE2d 291) (1992).

In this case, the appellate record contains only the trial court's written judgment as to the Newton County charges; it does not contain the trial court's written judgment as to the Walton County charges. Massey has filed a notice of appeal only in Newton County, and the notice of appeal lists only his convictions and

2

sentence in the Newton County case. The Walton County charges arose after Newton County officers – with the help of Walton County officers – attempted to serve an arrest warrant at Massey's residence in Walton County. When they arrived, Massey's vehicle was sitting in the driveway, and a woman living in the residence told officers Massey was not there, but that they could come inside and look for him. Officers subsequently discovered, in Massey's bedroom, a rifle and two DVDs, one titled "Too Young to Know Better" and another titled "Yips on Yips." Officers obtained a search warrant for the residence and recovered a shotgun, ammunition, camera and recording equipment, and numerous DVDs. Massey moved to suppress the evidence obtained from the residence, arguing that the woman had no authority to consent to the search and that even if she was authorized to consent, officers went beyond the scope of her consent.[1] As noted previously, the trial court denied the motion.

Because no final judgment has been entered in the Walton County case, jurisdiction remains vested in the trial court. Accordingly, any portion of this appeal

---

[1] We note that in his appellate brief, Massey contends that only "the seizure and search of the *discs* [was] illegal, and that the lower court should have suppressed the material from use at trial." (Emphasis supplied.) He does not challenge the denial of the motion to dismiss as to the other evidence retrieved from the residence.

challenging Massey's Walton County convictions, including the denial of his motion to suppress evidence seized from the residence, is dismissed.

2. We next address Massey's contention that the trial court erred in denying his motion to suppress the evidence underlying the Newton County charges.

> When the facts material to a motion to suppress are disputed, it generally is for the trial judge to resolve those disputes and determine the material facts. This principle is a settled one, and this Court has identified three corollaries of the principle, which limit the scope of review in appeals from a grant or denial of a motion to suppress in which the trial court has made express findings of disputed facts. First, an appellate court generally must accept those findings unless they are clearly erroneous. Second, an appellate court must construe the evidentiary record in the light most favorable to the factual findings and judgment of the trial court. And third, an appellate court generally must limit its consideration of the disputed facts to those expressly found by the trial court.

(Citations, punctuation and footnotes omitted.) *Hughes v. State*, 296 Ga. 744, 746, (770 SE2d 636) (2015). See also *Thompson v. State*, 348 Ga. App. 609, 612 (1) (824 SE2d 62) (2019). Viewing the evidence in that light,[2] the record shows that Massey

---

[2] Although the trial court did not issue written orders when it denied Massey's motions to suppress, the trial court addressed the suppression issues in its order denying Massey's amended motion for new trial. In that order, the trial court made express factual findings relating to its suppression decisions, and in our review of those suppression decisions we must "focus on the facts found by the trial court in

was in jail for a probation violation in September 2010, when he called his then-wife and asked her to issue payroll checks for his business. His wife testified that Massey told her to take the keys he had left at home when he was arrested, go to his place of business, and unlock his office desk to get the checks. She went to the business, unlocked the desk, and discovered drugs, a manila envelope with pornographic pictures sticking out of one end, and a CD, both of which contained nude photos of her thirteen-year-old niece taken in the bathroom of the Massey home. The wife called Massey and asked him for the password to his computer because "the guys needed to get on the computer to handle some accounts that were waiting – business related." Massey gave her his password and on the computer she discovered "child porn" and additional photos of Massey with other women. The wife called the sheriff's office and spoke to an investigator who told her to bring the items to police. The wife brought Massey's hard drive, a thumb drive, the CD, and the photos she found in Massey's desk to the sheriff's office and gave them permission to look through everything. The sheriff's office later asked the wife to bring them Massey's

[that] order, as the trial court sits as the trier of fact." (Citation and punctuation omitted.) *Caffee v. State*, 303 Ga. 557, 559 (1) (814 SE2d 386) (2018).

5

computer, which she did. The wife testified in the motion to suppress hearing that she was not involved in Massey's business.

An investigator with the Newton County Sheriff's Office testified that another investigator said that Massey's wife told another investigator that she had been instructed by Massey to go to his office to make payroll. Massey told his wife where the keys were located and gave her the password to the computer "where she was to go and do the payroll." While sitting at his desk, the wife came across nude photos of her niece. On the computer she found files containing nude children. The investigator understood that the wife had access to the computer and/or the password to the computer. The wife turned over to police the photos, a thumb drive, and the computer hard drive. The investigator called the Georgia Bureau of Investigation (GBI), told them to put her on a waiting list to search the items, and then obtained a search warrant. The investigator testified that it was her understanding that law enforcement had the wife's consent, but that she obtained a search warrant as a "precautionary measure." Before turning the items over to the GBI, and presumably before obtaining the search warrant, the investigator viewed hard copies of the pictures taken from the computer. On cross-examination, the investigator

acknowledged that her report makes no mention of the wife authorizing consent to search the computer or hard drive.

Massey testified that he was the controlling shareholder of the business and that his wife rarely came to the business or had any involvement in the business. Massey testified that he told his wife to get the payroll checks from his office and give them to an employee so the employee could write out the checks and stamp them with Massey's signature. He denied that the checks were in his desk, stating that they were in a box beside the desk. When asked if he had a conversation with his wife about accessing his computer Massey said, "I don't believe so."

In denying Massey's motion to suppress, the trial court found that the electronic evidence, including the hard drives, computer tower, thumb drive, and DVDs from Massey's office, "was seized in accordance with the federal and state constitutions after a non-law enforcement individual[, i.e., Massey's wife,] brought evidence she found in an area she was told to go by [Massey]." The trial court found that the wife went to the office because Massey "asked her to take the keys to the office so that she could get into his desk to retrieve items and help write payroll checks. [The wife then] took these items over [to] the police department 'freely and voluntarily,' and never felt any pressure to retrieve these items. . . . Additionally, . .

7

. [t]he Court need not get involved in what [the wife's] motives were for retrieving the evidence." The trial court further concluded that it was "reasonable for [the investigator] to believe that [the wife] had the authority to give consent to search these items since she was married to [Massey] at the time. Further, [the wife] gave explicit permission to [the investigator] for her to search the items." Massey makes two arguments in challenging the trial court's ruling. We consider them in turn below.

(a) Massey first contends that the search warrant for his office computer and electronic files was not supported by probable cause because it was issued based upon information provided by his now ex-wife who was not shown to be a credible source of information. We cannot consider this argument. "In challenging a trial court's denial of a motion to suppress, a defendant may not argue on appeal grounds that he did not argue (and obtain a ruling on) below." (Citation and punctuation omitted.) *Bryant v. State*, 288 Ga. 876, 894 (13) (b) (708 SE2d 362) (2011). See also *Bryant v. State*, 326 Ga. App. 385, 388 (756 SE2d 621) (2014).

At the suppression hearing, Massey argued that his wife did not have authority to consent to a search of his office computer and electronic files. Massey alleged that his wife was authorized to be in his office, but only for the very limited purpose of writing payroll checks. He also argued in passing that police never asked his wife for

8

consent. He now asserts for the first time on appeal that the search warrant was not supported by probable cause. Because Massey did not raise this particular argument below, he has waived it here.

(b) Massey also contends that the trial court erred in denying his motion to suppress because it did not consider the scope of any purported third-party consent. In this regard, Massey argues that his wife's authority was limited to retrieving items to write payroll checks.

A search and seizure is reasonable if it is conducted pursuant to a valid search warrant or with consent from (1) the individual whose property is searched; (2) a third party who has common authority over the property; or (3) if a police officer could have reasonably believed that a third party had common authority over the property. See *Illinois v. Rodriguez*, 497 U. S. 177, 181 (II), 188-189 (III) (B) (110 SCt 2793, 111 LE2d 148) (1990). See also *Gomillion v. State*, 298 Ga. 505, 508 (3) (783 SE2d 103) (2016). "Common authority . . . rests . . . on mutual use of the property by persons generally having joint access or control for most purposes." *United States v. Matlock*, 415 U. S. 164, 171 (II), n.7 (94 SCt 988, 39 LE2d 242) (1974). In some circumstances, a third party who purports to consent to a search lacks the actual authority to do so, but law enforcement may rely on that individual's *apparent*

9

*authority* to give consent, if such reliance is reasonable. See *Rodriguez*, 497 U. S. at 188-189 (III) (B). See also *Niles v. State*, 325 Ga. App. 621, 623 (754 SE2d 406) (2014) ("even if the consenting third party did not in fact have authority to give consent to [search], where police reasonably believed that the third party had such authority, this constitutes apparent authority which validates the [search]").

> As with other factual determinations bearing upon search and seizure, determination of consent to [search] must be judged against an objective standard: would the facts available to the officer at the moment warrant a [person] of reasonable caution in the belief that the consenting party had authority over the [property]? If not, then warrantless [search] without further inquiry is unlawful unless authority actually exists. But if so, the search is valid.

(Citation omitted.) *Niles*, 325 Ga. App. at 623.

Here, the trial court found that is was reasonable for the investigator to believe that the wife had the authority to give consent to search the computer items since she was married to Massey at the time and Massey had instructed her to go to his office. There was evidence presented at the suppression hearing that Massey had given the wife his computer password, thus giving her access to his computer and computer files, and that Massey had given her the password to access his computer for purposes other than payroll, because "business related" accounts were waiting. Because the

10

wife told an investigator that Massey had instructed her to go to his office to take care of payroll and that he had given her his computer password without telling her that other portions of the computer were off-limits, it was not unreasonable for the investigator to believe that the wife had common authority over or other sufficient relationship with Massey's computer and electronic files. See, e.g., *United States v. Thomas*, 818 F3d 1230, 1242 (III) (E) (11th Cir. 2016) (without separate passwords, or like security measures, reasonable officer would have thought that defendant and then-wife shared access to home computer, "and by doing so, assumed the risk that the other would allow the police to view the computer's contents"); *United States v. Buckner*, 473 F3d 551, 555 (4th Cir. 2007) (even though wife did not have password to computer primarily used by husband, totality of circumstances provided officers with basis for objectively reasonable belief that wife had authority to consent to search of computer's hard drive); *Antonelli v. Sherrow*, 246 Fed.Appx. 381, 384 (7th Cir. 2007) (where defendant had given his ex-wife his computer for duration of his incarceration, had not password-protected any files on computer, and had not indicated to her that any files were off-limits, his ex-wife could give valid consent). But see *Trulock v. Freeh*, 275 F3d 391, 403 (III) (c) (4th Cir. 2001) (co-resident of home and co-user of computer who did not know necessary password for co-user's

11

password-protected files, lacked authority to consent to a warrantless search of those files).

As for Massey's contention that his wife's authority to search the computer was limited to retrieving items to write payroll checks, and that she therefore had no authority to consent to a search of other areas on Massey's computer, we decline to "engage in such metaphysical subtleties in judging the efficacy of [his wife's] consent." *Frazier v. Cupp*, 394 U. S. 731, 740 (III) (89 SCt 1420, 22 LE2d 684) (1969) (rejecting defendant's argument that cousin only had permission to use one compartment of duffel bag). Compare *State v. Parrish*, 302 Ga. App. 838, 840 (691 SE2d 888) (2010) (defendant's wife did not have authority to consent to search of gun cabinet where evidence known to police established that wife did not have joint access or control over the gun cabinet; defendant locked the gun cabinet and maintained possession of the only key). In giving his wife his password and allowing her to use his computer, Massey "must be taken to have assumed the risk that [she] would allow someone else to look inside." *Frazier*, 394 U. S. at 740 (III). We find no merit in this contention and conclude that the trial court correctly found that Massey's wife had apparent authority over his computer and electronic files such that she had

the right to consent to their search. Accordingly, we affirm the trial court's denial of Massey's motion to suppress this evidence.[3]

3. Finally, Massey argues that the evidence obtained from the trailer, as reviewed in Division 1, should have been suppressed under the fruit of the poisonous tree doctrine because the evidence from his computers and electronic files was illegally obtained. Pretermitting whether the evidence from his computer and electronic files was illegally obtained, Massey never raised this argument below. Accordingly, he has waived it here. See *Bryant*, 288 Ga. at 894 (13) (b).

*Judgment affirmed in part; appeal dismissed in part. Barnes, P. J., and Mercier, J., concur.*

---

[3] In asserting this argument, Massey does not take issue with the evidence obtained from his desk.